**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DONALD GRIFFIN,**

                             **Plaintiff,**

   vs.                                              **9:11-cv-1125**
                                                            **(MAD/TWD)**

**DR. GERALD AMATUCCI and NURSE SMITH,**
*Nurse Administrator, Upstate Correctional Facility*,

                             **Defendants.**
_____

**APPEARANCES:**                                 **OF COUNSEL:**

**DONALD GRIFFIN**
**87-A-0320**
Orleans Correctional Facility
3531 Gaines Basin Road
Albion, New York 14411
Plaintiff *pro se*

**OFFICE OF THE NEW YORK**           **ADRIENNE J. KERWIN, AAG**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## DECISION AND ORDER

### I. INTRODUCTION

     Plaintiff commenced this civil rights action in September of 2011, alleging that his constitutional rights were violated while he was incarcerated at Upstate Correctional Facility. *See* Dkt. No. 1. Plaintiff alleges that Defendants violated his Eighth Amendment right to adequate medical care by providing him with a CPAP machine without the humidifier attachment recommended by the specialist who treated Plaintiff. *See id.*

On April 23, 2012, Defendants filed a motion to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Dkt. No. 16. In a Report-Recommendation and Order dated February 25, 2013, Magistrate Judge Dancks recommended that the Court deny Defendants' motion. *See* Dkt. No. 27. On March 15, 2013, Defendants filed objections to Magistrate Judge Dancks' Report-Recommendation and Order. *See* Dkt. No. 28.

Currently before the Court is Magistrate Judge Dancks' Report-Recommendation and Order.

## II. BACKGROUND[1]

On August 24, 2010, Plaintiff, then an inmate at Upstate Correctional Facility, underwent a sleep study at Alice Hyde Medical Center. *See* Dkt. No. 1 at 5.[2] Plaintiff was diagnosed with obstructive sleep apnea. *See id.* Plaintiff underwent another sleep study at Alice Hyde Medical Center on January 11, 2011, to determine the best treatment for his condition. *See id.* The specialist who conducted the study stated that "CPAP should be initiated using an UltraMirage full face medium mask with heat and humidity[.]" *See id.* at 12.

On February 14, 2011, Defendant Nancy Smith, a Nurse Administrator at Upstate Correctional Facility, received a quote for the price for Plaintiff's CPAP machine. *See id.* at 13. The document did not contain a quote for the humidifier recommended by the specialist. *See id.* CPAP machines with humidifiers cost approximately $230 more than those without. *See id.* at

---

[1] Since neither party objected to Magistrate Judge Dancks' recitation of the relevant facts contained in the complaint and accompanying documents, the Court has adopted her recitation to the extent that it is consistent with the complaint and attached exhibits.

[2] To avoid confusion, anytime the Court references a specific page number for an entry on the docket, it will cite to the page number assigned by the Court's electronic filing system.

2

20. On February 22, 2011, Defendant Smith issued a CPAP machine without a humidifier attachment to Plaintiff. *See id.* at 6.

On February 23, 2011, Plaintiff wrote to Defendant Smith and informed her that the CPAP machine without a humidifier was exacerbating his sleep apnea symptoms by drying out his throat. *See id.* Defendant Smith responded in writing on March 7, 2011, that Plaintiff "will not receive a humidifier" for the CPAP machine because Defendant Dr. Gerald Amatucci, the Regional Medical Director, "will not approve them." *See id.* at 17. Defendant Smith stated that the humidifier was "not needed for [the] CPAP machine to work." *See id.*

Plaintiff submitted a grievance regarding the humidifier issue on May 17, 2011. *See id.* at 19. Plaintiff attached a letter from an unnamed person to Plaintiff stating that "Stephanie spoke with Alice Hyde Hospital Sleep Apnea Center. . . . According to them the humidifier should always be used." *See id.* at 20. Plaintiff asserts that this letter indicates that "Alice Hyde Medical Center Sleep Lab made it clear" that the humidifier was required. *See id.* at 7.

Plaintiff's grievance was denied at the first level of review. *See id.* On June 16, 2011, the Superintendent denied the grievance at the second level of review. *See id.* at 30. The Superintendent's denial stated that Plaintiff "has been repeatedly advised that per . . . Dr. Amatucci, no humidifiers for CPAP machines will be approved as they are not medically necessary. Humidification has no effect on the performance of the machine in preventing sleep apnea. [Plaintiff] has a functional CPAP machine that does not require humidification to operate properly." *See id.* Plaintiff's grievance was denied at the final level of review on August 24, 2011. *See id.* at 36. The denial stated that "upon review by the Regional Medical Director, a humidifier for [the] CPAP machine is not medically indicated at this time." *See id.*

Plaintiff filed the complaint in this action on September 22, 2011. He alleges that he "is

suffering from sleep deprivation," which produces "continuous headaches, burning eyes, and heighten[ed] anxiety from fear of having a stroke or a[ ] heart attack or failure." *See id.* at 10. Plaintiff requests injunctive relief and damages. *See id.* at 38.

In its initial review of the complaint, the Court dismissed Plaintiff's claims against two supervisory officials without prejudice for failure to sufficiently plead their personal involvement. *See* Dkt. No. 7 at 5-7. The Court also dismissed Plaintiff's retaliation claim without prejudice. *See id.* at 7-8. The Court found that Plaintiff's Eighth Amendment claims against Defendants Smith and Amatucci were sufficiently well-pleaded to warrant a response from Defendants. *See id.* at 8-9.

In the same order, the Court denied Plaintiff's request for a temporary restraining order, finding that Plaintiff had failed to establish a clear or substantial likelihood of success on the merits of his Eighth Amendment claims. *See id.* at 9-12. The Court found that Plaintiff's motion for a temporary restraining order failed to clearly or substantially establish the objective prong of an Eighth Amendment claim because the only injuries Plaintiff claimed were a dry nose and throat and a general worsening of unspecified sleep apnea symptoms. *See id.* at 11. Moreover, the Court found that Plaintiff failed to clearly or substantially establish that either of the remaining Defendants acted with deliberate indifference. *See id.* at 11-12.

In her Report-Recommendation and Order, Magistrate Judge Dancks recommended that the Court find that find that Plaintiff has allegedly facts plausibly suggesting the requisite elements of an Eighth Amendment deliberate indifference claim. *See* Dkt. No. 27 at 7. Citing to a Southern District of California case, Magistrate Judge Dancks found that, for purposes of this motion, sleep apnea may be a serious medical condition. *See id.* (citation omitted).

4

Moreover, noting that "[t]his is a very close case," Magistrate Judge Dancks recommended that the Court find that Plaintiff has sufficiently pleaded the subjective element as well. *See id.* at 8-9. Specifically, Magistrate Judge Dancks found as follows:

> The specialist at Alice Hyde Medical Center, who it appears is the only doctor mentioned in the complaint who actually examined Plaintiff, believed that Plaintiff required heat and humidity for the CPAP machine to be effective. Reading the complaint in the light most favorable to Plaintiff, it appears that Defendants rejected the specialist's recommendation not because they disagreed with the specialist's opinion about what was best for Plaintiff, but because of a general policy against providing CPAP machines with humidifiers. Defendant Smith's statement that Defendant Amatucci "will not approve them" suggests the existence of a blanket policy against CPAP machines with humidifiers that may or may not have been medically supported in Plaintiff's individual case. (Dkt. No. 1 at 17.) A blanket policy is also suggested by the Superintendent's response to Plaintiff's grievance, which stated that "no humidifiers for CPAP machines will be approved . . . ." *Id.* at 30. The reflexive application of a blanket policy against a particular treatment in the face of contrary recommendations from treating physicians may indicate deliberate indifference. . . . In addition, given the lower price of CPAP machines without humidifiers (Dkt. No. 1 at 20), there is at least an inference plausibly suggesting that Defendants consciously chose an easier and less efficacious treatment plan rather than properly treating Plaintiff's serious medical need.

*See id.* (internal citations omitted).

Currently before the Court is Magistrate Judge Dancks' February 25, 2013 Report-Recommendation and Order and Defendants' objections thereto.

### III. DISCUSSION

**A.     Standard**

When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). However,

5

when a party files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted).  After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).

A litigant's failure to file objections to a magistrate judge's report and recommendation, even when that litigant is proceeding *pro se*, waives any challenge to the report on appeal.  *See Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir. 2003) (holding that, "[a]s a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point" (citation omitted)).  A *pro se* litigant must be given notice of this rule; notice is sufficient if it informs the litigant that the failure to timely object will result in the waiver of further judicial review and cites pertinent statutory and civil rules authority.  *See Frank v. Johnson*, 968 F.2d 298, 299 (2d Cir. 1992); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (holding that a *pro se* party's failure to object to a report and recommendation does not waive his right to appellate review unless the report explicitly states that failure to object will preclude appellate review and specifically cites 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and former 6(e) of the Federal Rules of Civil Procedure).

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment."  U.S. Const. amend. VIII.  This includes the provision of medical care and punishments involving "the unnecessary and wanton infliction of pain."  *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (citations omitted).  A prisoner advancing an Eighth Amendment claim for denial of medical care must allege and prove deliberate indifference to a serious medical

6

need.  *See Wilson v. Seiter*, 501 U.S. 294, 297 (1991); *Hathaway*, 37 F.3d at 66.  More than negligence is required "but less than conduct undertaken for the very purpose of causing harm." *Hathaway*, 37 F.3d at 66.

The test for a § 1983 claim is twofold.  First, the prisoner must show that there was a sufficiently serious medical need.  *See Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). Second, the prisoner must show that the prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm.  *See id.*  "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer v. Brennan*, 511 U.S. 825, 844 (1994).

"'Because society does not expect that prisoners will have unqualified access to healthcare,' a prisoner must first make [a] threshold showing of serious illness or injury" to state a cognizable claim.  *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (quotation omitted). Since there is no distinct litmus test, whether a medical condition is serious depends on certain factors, such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain." *Brock v. Wright*, 315 F.3d 158, 162-63 (2d Cir. 2003) (citing *Chance*, 143 F.3d at 702).  The court should also judge the severity of the denial of care within the context of the surrounding facts and circumstances of the case.  *See Smith*, 316 F.3d at 185.

Deliberate indifference requires the prisoner "to prove that the prison official knew of and disregarded the prisoner's serious medical needs."  *Chance*, 143 F.3d at 702.  Thus, prison officials must be "intentionally denying or delaying access to medical care or intentionally

interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104, (1976). "Mere disagreement over proper treatment does not create a constitutional claim," as long as the treatment was adequate. *Id.* at 703. Furthermore, allegations of negligence or malpractice do not constitute deliberate indifference unless the malpractice involved culpable recklessness. *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).

**B.     Defendants' objections**

In their objections to Magistrate Judge Dancks' Report-Recommendation and Order, Defendants object on two grounds. *See* Dkt. No. 28 at 1-2. First, Defendants argue that "while Judge Dancks finds that the complaint may support a claim that a blanket prohibition against the use of humidifiers with CPAP machines in DOCCS is arguably evidence of 'deliberate indifference,' . . . the complaint fails to allege that N.P. Nancy Smith has any ability to make, or challenge, such a policy." *See id.* (internal citation omitted). Moreover, Defendants claim that "the complaint itself alleges that N.P. [Smith] had no ability to choose and provide a humidifier, so she necessarily did not 'choose an easier and less efficacious treatment plan.'" *See id.* at 2 (quotation omitted).

Second, Defendants claim that "the complaint and attached documents allege that Dr. Amatucci will not approve humidifiers because they are 'not needed for [the] CPAP machine to work,' . . . and 'are not medically necessary.'" *See id.* (internal quotations omitted). Defendants assert that "[w]hile the complaint also contains an allegation that CPAP machines with humidifiers are more expensive than those without humidifiers, . . . there are no allegations in the complaint that the reason behind Dr. Amatucci's alleged position on this issue is based on financial concerns." *See id.* (citations omitted). Therefore, Defendants claim that since the

8

reasons actually stated in the complaint and attached documents are based on Defendant Amatucci's medical judgment and there is no allegation that the humidifier will not be provided because of its cost, the complaint should be dismissed against Defendant Amatucci. *See id.* (citing *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001) ("disagreements over medications, diagnostic techniques . . . , forms of treatment, or the need for specialists . . . are not adequate grounds for a § 1983 claim")).

**C.     Analysis**

Contrary to Defendants' contentions, Magistrate Judge Dancks correctly recommended that the motion to dismiss should be denied. As to Defendant Smith, although she may have been simply following the policy of a supervisor in not providing Plaintiff with the requested additions to his CPAP machine, construing the facts in the light most favorable to Plaintiff, the Court cannot grant Defendants' motion on this ground. Specifically, Plaintiff alleges that Defendant Smith failed to submit his request for a humidifier for his CPAP machine to Defendant Amatucci. Moreover, Plaintiff alleges that Defendant Smith ignored the Alice Hyde Medical Center's prescription that Plaintiff receive a machine that provides "heat and humidity" when she failed to obtain a price quote for a CPAP machine with those capabilities from the medical supplier. *See* Dkt. No. 1 at 6-7. Although Defendant Smith may be able to establish in a properly filed motion for summary judgment that she was merely following procedures put in place by her supervisors in failing to provide Plaintiff with all of the prescribed equipment, in light of the special solicitude the Court must afford to *pro se* plaintiffs, the Court finds that Magistrate Judge Dancks correctly recommended that the Court deny Defendants' motion as to the claims against Defendant Smith.

9

Moreover, Magistrate Judge Dancks correctly recommended that Defendants' motion should be denied as to Defendant Amatucci. Plaintiff has plausibly suggested that this is not simply a mere disagreement regarding medical treatment. Rather, he argues that the CPAP machine with no humidifier is not an adequate treatment for his condition and that it is contrary to the treatment prescribed by the only specialist to whom Plaintiff was sent. *See* Dkt. No. 1 at 12. Magistrate Judge Dancks correctly noted that this is a "very close call," but that given the special solicitude afforded to *pro se* plaintiffs, the motion to dismiss should be denied. Plaintiff's complaint could be read to plausibly argue that Defendants ignored the specialist's recommendation regarding heat and humidity because of a general policy against providing CPAP machines with humidifiers. *See* Dkt. No. 1 at 17, 30. "The reflexive application of a blanket policy against a particular treatment in the face of contrary recommendations from treating physicians may indicate deliberate indifference." *See* Dkt. No. 27 at 9 (citing *Johnson v. Wright*, 412 F.3d 398, 400 (2d Cir. 2005) (reversing summary judgment for the defendants and finding triable issues of fact where the evidence showed that non-treating physician administrators applied a blanket policy against providing hepatitis C medication despite treating physicians' recommendations)).

Finally, to the extent that Defendants argue that after providing Plaintiff with a CPAP machine, his only medical need requiring treatment is a "dry throat," the Court finds that Plaintiff has sufficiently alleged a serious medical need. *See* Dkt. No. 28 at n.1. Plaintiff has alleged that without the recommended heat and humidity, the CPAP machine is in fact exacerbating his sleep apnea symptoms and can lead to more serious health consequences, other than a mere dry mouth. *See* Dkt. No. 1 at 6, 9.

Based on the foregoing, the Court denies Defendants' motion to dismiss.

## IV. CONCLUSION

After carefully considering Magistrate Judge Dancks' Report-Recommendation and Order, Defendants' objections thereto, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Magistrate Judge Dancks' February 25, 2013 Report-Recommendation and Order is **ADOPTED** in its entirety for the reasons stated therein; and the Court further

**ORDERS** that Defendants' motion to dismiss is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve the parties with a copy of this Decision and Order in accordance with the Local Rules; and the Court further

**ORDERS** that all further pretrial matters are referred to Magistrate Judge Dancks.

**IT IS SO ORDERED.**

Dated: March 26, 2013
        Albany, New York

Mae A. D'Agostino
U.S. District Judge