UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

DONALD GRIFFIN,

                              Plaintiff,
                                                        9:11-CV-1125
v.                                                      (MAD/TWD)

DR. GERALD AMATUCCI,
NANCY SMITH,

                              Defendants.

_____

APPEARANCES:                                    OF COUNSEL:

DONALD GRIFFIN, 87-A-0320
Plaintiff pro se
Orleans Correctional Facility
3531 Gaines Basin Road
Albion, New York 14411

HON. ERIC T. SCHNEIDERMAN                        ADRIENNE J. KERWIN, ESQ.
Attorney General for the State of New York       JAMES B. MCGOWAN, ESQ.
Counsel for Defendants
The Capitol
Albany, New York 12224

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

### <u>REPORT-RECOMMENDATION and ORDER</u>

This pro se prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has

been referred to me for Report and Recommendation by the Honorable Mae A. D'Agostino,

United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).  Plaintiff

Donald Griffin alleges that Defendants violated his Eighth Amendment right to adequate medical

care by providing him with a CPAP machine without the humidifier attachment recommended by

the specialist who treated Plaintiff.  (Dkt. No. 1.)  Currently pending before the Court is

Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Dkt. No. 37.)  For the reasons that follow, I recommend that Defendants' motion be denied.

## I.    BACKGROUND

On August 24, 2010, Plaintiff, then an inmate at Upstate Correctional Facility, underwent a sleep study at Alice Hyde Medical Center.  (Dkt. No. 1 at 5.[1])  Plaintiff was diagnosed with obstructive sleep apnea.  *Id*.  Plaintiff underwent another sleep study at Alice Hyde Medical Center on January 11, 2011, to determine the best treatment for his condition.  (Dkt. No. 1 at 5; Dkt. No. 37-4 ¶ 3.)  The specialist who conducted the study stated that "CPAP should be initiated using an UltraMirage full face medium mask with heat and humidity."  (Dkt. No. 1 at 12; Dkt. No. 37-4 ¶ 4.)

On February 14, 2011, Defendant Nancy Smith, a Nurse Administrator at Upstate Correctional Facility, received a quote for the price for Plaintiff's CPAP machine.  (Dkt. No. 1 at 13.)  The document did not contain a quote for the humidifier recommended by the specialist.  *Id*. Defendant Smith submitted a request for approval for the cost of the CPAP machine without a humidifier.  (Dkt. No. 41-4 at 3.)  Defendant Regional Medical Director Gerald Amatucci approved Defendant Smith's request for that CPAP machine on February 15, 2011.  (Dkt. No. 37-4 ¶ 6.)  On February 22, 2011, Defendant Smith issued a CPAP machine without a humidifier attachment to Plaintiff.  (Dkt. No. 1at 6, Dkt. No. 37-4 ¶ 8.)

On February 23, 2011, Plaintiff wrote to Defendant Smith and informed her that the CPAP machine without a humidifier was exacerbating his sleep apnea symptoms by drying out

---

[1]      Page numbers in citations to the complaint refer to the page numbers assigned by the Court's electronic filing system rather than to the page numbers in the original document.

his throat.  *Id*.  Defendant Smith responded in writing on March 7, 2011, that Plaintiff "will not

receive a humidifier" for the CPAP machine because Defendant Amatucci "will not approve

them."  *Id*. at 17.  Defendant Smith stated that the humidifier was "not needed for [the] CPAP

machine to work."  *Id*.

Defendant Amatucci has never examined Plaintiff.  (Dkt. No. 37-3 at 28:16-18.)

Northing in the record indicates that Defendant Amatucci reviewed Plaintiff's medical files in the

course of considering Defendant Smith's request.  Defendant Amatucci declares that:

> I did not approve requests for humidifiers to be used with CPAP
> machines to treat sleep apnea because humidification has no effect on
> the performance of CPAP machines in preventing sleep apnea.
> Contrary to the belief of the plaintiff, using a CPAP machine without
> a humidifier does not worsen or exacerbate sleep apnea.  It treats it.
>
> In a response to a letter from the plaintiff written on my behalf by my
> designee, the plaintiff was informed that humidifiers for CPAP
> machines will not be approved because they are not medically
> necessary to treat sleep apnea.
>
> I understand that the plaintiff alleges that he experienced a dry mouth
> and throat, and did not sleep, the two [or] three times that he used the
> CPAP machine provided to him.  These are common side-effects
> associated with the use of CPAP machines.  However, such effects do
> not affect a user's sleep apnea, or interfere with the effectiveness of
> the CPAP machine in treating sleep apnea.  In my experience, most
> CPAP machine users become accustomed to the dryness after using
> the CPAP machine for a period of time.
>
> My decision not to approve the use of humidifiers with CPAP
> machines was based upon my medical judgment, and was consistent
> with the standard of care in treating sleep apnea.

(Dkt. No. 37-5 ¶¶ 4-7.)

Plaintiff testified at his deposition that he has not used his CPAP machine since

approximately March 2011.  (Dkt. No. 37-3 at 31:2-8.)  Plaintiff submitted a grievance regarding

the humidifier issue on May 17, 2011. (Dkt. No. 1 at 19.) Plaintiff attached a letter from an

unnamed person to Plaintiff stating that "Stephanie spoke with Alice Hyde Hospital Sleep Apnea

Center . . . . According to them the humidifier should always be used." *Id*. at 20. Plaintiff asserts

that this letter indicates that "Alice Hyde Medical Center Sleep Lab made it clear" that the

humidifier was required. *Id*. at 7.

Plaintiff's grievance was denied at the first level of review. *Id*. On June 16, 2011, the

Superintendent denied the grievance at the second level of review. *Id*. at 30. The

Superintendent's denial stated that Plaintiff "has been repeatedly advised that per . . . Dr.

Amatucci, no humidifiers for CPAP machines will be approved as they are not medically

necessary. Humidification has no effect on the performance of the machine in preventing sleep

apnea. [Plaintiff] has a functional CPAP machine that does not require humidification to operate

properly." *Id*. Plaintiff's grievance was denied at the final level of review on August 24, 2011.

*Id*. at 36. The denial stated that "upon review by the Regional Medical Director, a humidifier for

[the] CPAP machine is not medically indicated at this time." *Id*.

Plaintiff filed the complaint in this action on September 22, 2011. He alleges that he "is

suffering from sleep deprivation," which produces "continuous headaches, burning eyes, and

heighten[ed] anxiety from fear of having a stroke or a[] heart attack or failure." *Id*. at 10.

Plaintiff requests injunctive relief and damages. *Id*. at 38.

In its initial review of the complaint, the Court dismissed Plaintiff's claims against two

supervisory officials without prejudice for failure to sufficiently plead their personal

involvement. (Dkt. No. 7 at 5-7.) The Court also dismissed Plaintiff's retaliation claim without

prejudice. *Id*. at 7-8. The Court found that Plaintiff's Eighth Amendment claims against

Defendants Smith and Amatucci were sufficiently well-pleaded to warrant a response from

Defendants. *Id*. at 8-9.

In the same order, the Court denied Plaintiff's request for a temporary restraining order,

finding that Plaintiff had failed to establish a clear or substantial likelihood of success on the

merits of his Eighth Amendment claims. *Id*. at 9-12. The Court found that Plaintiff's motion for

a temporary restraining order failed to clearly or substantially establish the objective prong of an

Eighth Amendment claim because the only injuries Plaintiff claimed were a dry nose and throat

and a general worsening of unspecified sleep apnea symptoms. *Id*. at 11. Moreover, the Court

found that Plaintiff failed to clearly or substantially establish that either of the remaining

Defendants acted with deliberate indifference. *Id*. at 11-12.

Defendants Amatucci and Smith moved to dismiss the complaint. (Dkt. No. 16.)

Plaintiff opposed the motion. (Dkt. No. 21.) The Court denied the motion, finding that although

"[t]his is a very close case," Plaintiff had alleged facts plausibly suggesting that Defendants,

perhaps motivated by cost considerations, violated the Eighth Amendment by reflexively

applying a blanket policy against a particular treatment in the face of contrary recommendations

from treating physicians. (Dkt. No. 27 at 9; Dkt. No. 29.)

Defendants answered the complaint (Dkt. No. 30) and the parties engaged in discovery.

Defendants now move for summary judgment. (Dkt. No. 37.) Plaintiff has opposed the motion.

(Dkt. No. 41.)

## II.    LEGAL STANDARD GOVERNING MOTIONS FOR SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56, summary judgment is warranted "if the

movant shows that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party moving for summary

judgment bears the initial burden of showing, through the production of admissible evidence, that

no genuine issue of material fact exists.  *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir.

2006).  Only after the moving party has met this burden is the nonmoving party required to

produce evidence demonstrating that genuine issues of material fact exist.  *Id*. at 273.  The

nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's]

pleading" or "simply show that there is some metaphysical doubt as to the material facts."

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 & n.11 (1986).  Rather, a

dispute regarding a material fact is *genuine* "if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248

(1986).  In determining whether a genuine issue of material[2] fact exists, the Court must resolve

all ambiguities and draw all reasonable inferences against the moving party.  *Major League

Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).

## III.    ANALYSIS

Plaintiff alleges that Defendants Amatucci and Smith violated his Eighth Amendment

right to adequate medical care by failing to provide him with a CPAP machine with a humidifier

attachment.  (Dkt. No. 1.)  Defendants argue that they are entitled to summary judgment because

(A) there is no evidence that Plaintiff suffered any serious medical need due to the lack of a

humidifier; (B) there is no evidence that Defendants acted with deliberate indifference; and (C)

they are entitled to qualified immunity.  (Dkt. No. 37-7.)

---

[2]        A fact is "material" only if it would have some effect on the outcome of the suit.
*Anderson*, 477 U.S. at 248.

The Eighth Amendment to the United States Constitution prohibits "cruel and unusual" punishments. The word "punishment" refers not only to deprivations imposed as a sanction for criminal wrongdoing, but also to deprivations suffered during imprisonment. *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976). Punishment is "cruel and unusual" if it involves the unnecessary and wanton infliction of pain or if it is incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Id*. at 102 (quoting *Trop v. Dulles*, 356 U.S. 86, 100 (1958)). Thus, the Eighth Amendment imposes on jail officials the duty to "provide humane conditions of confinement" for prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). In fulfilling this duty, prison officials must ensure, among other things, that inmates receive adequate medical care. *Id*. (citing *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

There are two elements to a prisoner's claim that prison officials violated his or her Eighth Amendment right to receive medical care: "the plaintiff must show that she or he had a serious medical condition and that it was met with deliberate indifference." *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009) (citation and punctuation omitted). "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind." *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003).

A.      Serious Medical Need

Defendants argue that Plaintiff has not demonstrated a serious medical need. (Dkt. No. 37-7 at 2[3].) For the reasons discussed below, I recommend that the Court find that Defendants

---

[3]      Page numbers in citations to Defendants' memorandum of law refer to the page numbers in the original document rather than to the page numbers assigned by the Court's electronic filing system.

have not, at this time, met their burden of establishing that they are entitled to judgment as a matter of law on this ground.

A "serious medical condition" is "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J. dissenting) (citations omitted), *accord Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1996), *cert. denied*, 513 U.S. 1154 (1995); *Chance v. Armstrong*, 143 F.3d 698*,* 702 (2d Cir. 1998). Relevant factors to consider when determining whether an alleged medical condition is sufficiently serious include, but are not limited to: (1) the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; (2) the presence of a medical condition that significantly affects an individual's daily activities; and (3) the existence of chronic and substantial pain. *Chance*, 143 F.3d at 702-03.

In their motion to dismiss, Defendants focused almost entirely on the subjective prong of Plaintiff's Eighth Amendment claim. (Dkt. No. 16-1.) In my Report-Recommendation regarding that motion, I found that

> Defendants cursorily argue that Plaintiff has not alleged facts plausibly suggesting that he suffers from a serious medical need. Defendants do not cite any authority for this argument. (Dkt. No. 16-1 at 6.) It appears that there is no decision from either the Second Circuit or the district courts in this circuit discussing whether sleep apnea is a serious medical condition for Eighth Amendment purposes. District courts in other circuits have concluded that sleep apnea may be a serious medical condition. *Goudlock v. Perez*, No. 08cv204, 2012 U.S. Dist. LEXIS 33485, at *14-15, 2012 WL 846444, at *5 (S.D. Cal. Mar. 13, 2012) (collecting cases). Accordingly I find, for the purposes of this motion only, that Plaintiff has pleaded facts plausibly suggesting the objective prong of his Eighth Amendment claim.

(Dkt. No. 27 at 7, footnote omitted.)

In objections to the Report-Recommendation, Defendants argued that:

> [T]he medical need at issue in this case is a dry throat. There is no dispute that the plaintiff was treated for his sleep apnea. The allegations in this case are that the plaintiff's sleep apnea was not being treated precisely as a specialist recommended and, as a result, the plaintiff suffered a dry throat – apparently a sleep apnea symptom. Therefore, the defendants . . . object to the Report and Recommendation to the extent that it is read as finding that the serious medical need at issue in this case is untreated sleep apnea.

(Dkt. No. 28 at 1 n.1, citations omitted.)

In the Court's order adopting the Report-Recommendation, the Court stated that:

> [T]o the extent that Defendants argue that after providing Plaintiff with a CPAP machine, his only medical need requiring treatment is a "dry throat," the Court finds that Plaintiff has sufficiently alleged a serious medical need. Plaintiff has alleged that without the recommended heat and humidity, the CPAP machine is in fact exacerbating his sleep apnea symptoms and can lead to more serious health consequences, other than mere dry mouth.

(Dkt. No. 29 at 10, citations omitted.)

In the pending motion, Defendants argue, without citation to evidence or authority, that "[t]he only alleged untreated medical need alleged by the plaintiff is the dry mouth and throat and lack of sleep that his sleep apnea treatment was causing him. There can be no serious argument that dry mouth and throat and difficulty sleeping are the types of medical needs that the Eighth Amendment was designed to address." (Dkt. No. 37-7 at 2.) Defendants' Statement Pursuant to Rule 7.1(a)(3) does not include any facts supporting the argument that Plaintiff does not suffer from a serious medical need. (Dkt. No. 37-6.) Defendants' current argument is precisely the same as presented in their objections to the previous Report-Recommendation. Yet Defendants have presented no new evidence to overcome the Court's previous observation that "Plaintiff has

9

alleged that without the recommended heat and humidity, the CPAP machine is in fact exacerbating his sleep apnea symptoms." (Dkt. No. 29 at 10.) Moreover, Defendants' argument disregards the fact that Plaintiff testified at his deposition that he has not used his CPAP machine since approximately March 2011. (Dkt. No. 37-3 at 31:2-8.) Thus, Plaintiff claims that the CPAP machine without a humidifier attachment is akin to having no CPAP machine at all. Plaintiff's complaint alleges that he suffered dry throat, "worsening sleep apnea symptoms," and that because he cannot cope with the CPAP machine without the humidifier he is at risk for serious health problems. (Dkt. No. 1 at 6, 9.)

As the Court noted in its previous order, it appears that there is no decision from either the Second Circuit or the district courts in this circuit discussing whether sleep apnea is a serious medical condition for Eighth Amendment purposes. District courts in other circuits have concluded that sleep apnea may be a serious medical condition. *Goudlock v. Perez*, No. 08cv204, 2012 U.S. Dist. LEXIS 33485, at *14-15, 2012 WL 846444, at *5 (S.D. Cal. Mar. 13, 2012) (collecting cases).[4] While it may be that Plaintiff's particular experience of sleep apnea does not rise to the level of seriousness discussed in those cases, Defendants have not met their burden of showing through the production of admissible evidence that no genuine issue of material fact exists on this issue. As noted above, Defendants have not included any facts about Plaintiff's particular experience of sleep apnea symptoms in their separate statement of facts or directed the Court to any specific part of Plaintiff's medical record describing Plaintiff's symptoms.

---

[4] The Court has previously provided Plaintiff with a copy of this unpublished decision in accordance with the Second Circuit's decision in *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).

While this remains an extremely close case, two policy considerations warrant a finding

that the issue of the seriousness of Plaintiff's medical condition should survive summary

judgment. First, as in any motion for summary judgment, the burden is on Defendants as the

moving parties to show, through the production of admissible evidence, that no genuine issue of

material fact exists. *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006). Second, the

Second Circuit requires district courts to afford special solicitude to pro se litigants such as

Plaintiff. *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d. Cir. 2010). Therefore, Defendants have

not demonstrated that they are entitled to judgment as a matter of law on this ground.

   B.      Deliberate Indifference

Defendants argue that Plaintiff cannot establish that they acted with deliberate

indifference. (Dkt. No. 37-7 at 3-4.) For the reasons discussed below, I find that Defendants

have not met their burden of demonstrating that they are entitled to judgment as a matter of law

on this ground.

Medical mistreatment rises to the level of deliberate indifference only when it "involves

culpable recklessness, i.e., an act or a failure to act . . . that evinces 'a conscious disregard of a

substantial risk of serious harm.'" *Chance*, 143 F.3d at 703 (quoting *Hathaway v. Coughlin*, 99

F.3d 550, 553 (2d Cir. 1996)). Thus, to establish deliberate indifference, an inmate must prove

that (1) a prison medical care provider was aware of facts from which the inference could be

drawn that the inmate had a serious medical need; and (2) the medical care provider actually

drew that inference. *Farmer*, 511 U.S. at 837; *Chance*, 143 F.3d at 702-703. The inmate then

must establish that the provider consciously and intentionally disregarded or ignored that serious

medical need. *Farmer*, 511 U.S. at 835. "[M]ere disagreement over proper treatment does not

create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance*, 143 F.3d at 703. However, "a physician may be deliberately indifferent if he or she consciously chooses an easier and less efficacious treatment plan." *Id*. (quoting *Hathaway*, 99 F.3d at 553).

The reflexive application of a blanket policy against a particular treatment in the face of contrary recommendations from treating physicians may indicate deliberate indifference. *Johnson v. Wright*, 412 F.3d 398, 400 (2d Cir. 2005) (reversing summary judgment for defendants and finding triable issue of fact where evidence showed that non-treating physician administrators applied blanket policy against providing hepatitis C medication despite treating physicians' recommendations). The application of a blanket policy by non-treating administrators and medical personnel does not demonstrate deliberate indifference where the defendant considers the plaintiff's particular medical needs as part of the decision-making process. *See, e.g., Byng v. Wright*, No. 09 Civ. 9924 (PKC)(JCF), 2012 U.S. Dist. LEXIS 39618, at *23-26, 2012 WL 967430, at *9-10 (S.D.N.Y. Mar. 20, 2012) (defendants entitled to summary judgment because, unlike *Johnson*, plaintiff's former treating physician agreed with administrator's decision and evidence showed that defendant administrator considered plaintiff's medical records when making decision rather than reflexively applying a policy); *Watson v. Wright*, No. 9:08-CV-62 (NAM/ATB), 2011 U.S. Dist. LEXIS 116709, at *32-34, 2011 WL 4527789, at *10 (N.D.N.Y. Aug. 4, 2011) (defendants entitled to summary judgment because, unlike *Johnson*, there was disagreement between plaintiff's treating physicians regarding the proper treatment and defendant administrator "became actively involved in plaintiff's treatment

and reviewed his medical records" rather than reflexively applying a blanket policy).[5]

    1.    <u>Defendant Amatucci</u>

Defendants argued in their motion to dismiss that "Plaintiff admits that he was issued a CPAP machine to treat his sleep apnea. However, plaintiff would prefer to have a CPAP machine with a humidifier attached. Although plaintiff disagrees with the treatment he is being provided, without more he has failed to allege an Eighth Amendment violation." (Dkt. No. 16-1 at 6.)

In my Report-Recommendation, I found that:

> This is a very close case. However, because the Court must afford special solicitude to pro se civil rights plaintiffs and draw all inferences in Plaintiff's favor, I recommend that the Court deny Defendants' motion to dismiss. The specialist at Alice Hyde Medical Center, who it appears is the only doctor mentioned in the complaint who actually examined Plaintiff, believed that Plaintiff required heat and humidity for the CPAP machine to be effective. Reading the complaint in the light most favorable to Plaintiff, it appears that Defendants rejected the specialist's recommendation not because they disagreed with the specialist's opinion about what was best for Plaintiff, but because of a general policy against providing CPAP machines with humidifiers. Defendant Smith's statement that Defendant Amatucci "will not approve *them*" suggests the existence of a blanket policy against CPAP machines with humidifiers that may or may not have been medically supported in Plaintiff's individual case. (Dkt. No. 1 at 17.) A blanket policy is also suggested by the Superintendent's response to Plaintiff's grievance, which stated that "no humidifiers for CPAP machines will be approved . . . ." *Id*. at 30. The reflexive application of a blanket policy against a particular treatment in the face of contrary recommendations from treating physicians may indicate deliberate indifference. *Johnson v. Wright*, 412 F.3d 398, 400 (2d Cir. 2005) (reversing summary judgment for defendants and finding triable issue of fact where evidence showed

---

[5]    The Court will provide Plaintiff with copies of these unpublished decisions in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

that non-treating physician administrators applied blanket policy
against providing hepatitis C medication despite treating physicians'
recommendations).  In addition, given the lower price of CPAP
machines without humidifiers (Dkt. No. 1 at 20), there is at least an
inference plausibly suggesting that Defendants consciously chose an
easier and less efficacious treatment plan rather than properly treating
Plaintiff's serious medical need.

(Dkt. No. 27 at 8-9.)

Defendants objected to the Report-Recommendation.  (Dkt. No. 28.)  Regarding the

subjective prong of the Eighth Amendment claim against Defendant Amatucci, they argued that:

the complaint and attached documents allege that Dr. Amatucci will
not approve humidifiers because they are "not needed for [the] CPAP
machine to work," and "are not medically necessary."  While the
complaint also contains an allegation that CPAP machines with
humidifiers are more expensive than those without humidifiers, there
are no allegations in the complaint that the reason behind Dr.
Amatucci's alleged position on this issue is based on financial
concerns.  Since the reasons actually stated in the complaint and
attached documents are based on Dr. Amatucci's medical judgment,
and there is no allegation that the humidifier will not be provided
because of the cost, the complaint should be dismissed as against Dr.
Amatucci.

Id. at 2 (citations omitted).

The Court rejected Defendants' objections as follows:

Plaintiff has plausibly suggested that this is not simply a mere
disagreement regarding medical treatment.  Rather, he argues that the
CPAP machine with no humidifier is not an adequate treatment for
his condition and that is contrary to the treatment prescribed by the
only specialist to whom Plaintiff was sent.  Magistrate Judge Dancks
correctly noted that this is a "very close call," but that given the
special solicitude afforded to pro se plaintiffs, the motion to dismiss
should be denied.  Plaintiff's complaint could be read to plausibly
argue that Defendants ignored the specialist's recommendation
regarding heat and humidity because of a general policy against
providing CPAP machines with humidifiers.    The reflexive
application of a blanket policy against a particular treatment in the

> face of contrary recommendations from treating physicians may
> indicate deliberate indifference.

(Dkt. No. 29 at 10, citations and punctuation omitted.)

Here, as they did in their motion to dismiss (Dkt. No. 16-1 at 6), Defendants argue that

Plaintiff merely disagrees with the treatment Defendants provided and would simply prefer to

have a CPAP machine with a humidifier attached. (Dkt. No. 37-7 at 3.) Defendants argue their

lack of deliberate indifference as follows:

> Dr. Amatucci has testified that, in his professional medical judgment,
> despite causing a dry mouth and throat, the CPAP machine without
> a humidifier sufficiently treats sleep apnea. Additionally, the
> evidence in the record demonstrates that Nurse Administrator Smith
> did not order a humidifier for plaintiff's CPAP machine pursuant to
> her understanding of Dr. Amatucci's medical position that
> humidifiers are not medically necessary. However, upon plaintiff's
> complaint, Nurse Administrator Smith confirmed with Dr. Amatucci
> that a humidifier would not be approved. As a result, there is no
> evidence in this case that the defendants were deliberately indifferent
> to plaintiff's serious medical needs.

(Dkt. No 37-7 at 3-4.)

As he did in opposition to the motion to dismiss (Dkt. No. 21 at 2), Plaintiff argues that

he does not simply "prefer" the CPAP with a humidifier. Rather, he argues, the CPAP machine

with no humidifier is not adequate treatment because it is not the treatment that the specialist

recommended and because the lack of humidifier dries out his mouth, which causes him to wake

up choking. (Dkt. No. 41-3 at 2.) Plaintiff argues that the specialist who prescribed the CPAP

machine with a humidifier was "clearly aware" of Plaintiff's dry-mouth issue and "showed it by

recommending the humidifier." *Id*.

As noted above, Plaintiff has never met Defendant Amatucci. (Dkt. No. 37-3 at 28:16-

18.) There is no indication in the evidence before the Court that Defendant Amatucci considered

Plaintiff's medical records or anything about Plaintiff's particular medical needs before applying

his blanket policy against humidifiers. The specialist at Alice Hyde Medical Center, who it

appears is the only medical professional who actually examined Plaintiff for his sleep apnea,

believed that Plaintiff required heat and humidity for the CPAP machine to be effective. (Dkt.

No. 41-4 at 2.) Accordingly, although this remains a very close case, I recommend that the Court

reject Defendant Amatucci's argument that he is entitled to judgment as a matter of law on this

ground.

### 2. Defendant Smith

In objections to the Report-Recommendation on their motion to dismiss, Defendants

argued that "while Judge Dancks finds that the complaint may support a claim that a blanket

prohibition against the use of humidifiers with CPAP machines in DOCCS is arguably evidence

of 'deliberate indifference,' . . . the complaint fails to allege that N.P. Nancy Smith has any

ability to make, or challenge, such a policy." (Dkt. No. 28 at 1-2.) The Court rejected that

objection as follows:

> As to Defendant Smith, although she may have been simply following
> the policy of a supervisor in not providing Plaintiff with the requested
> additions to his CPAP machine, construing the facts in the light most
> favorable to Plaintiff, the Court cannot grant Defendants' motion on
> this ground. Specifically, Plaintiff alleges that Defendant Smith
> failed to submit his request for a humidifier for his CPAP machine to
> Defendant Amatucci. Moreover, Plaintiff alleges that Defendant
> Smith ignored the Alice Hyde Medical Center's prescription that
> Plaintiff receive a machine that provides 'heat and humidity' when
> she failed to obtain a price quote for a CPAP machine with those
> capabilities from the medical supplier. Although Defendant Smith
> may be able to establish in a properly filed motion for summary
> judgment that she was merely following procedures put in place by

her supervisors in failing to provide Plaintiff with all of the prescribed equipment, in light of the special solicitude the Court must afford to pro se plaintiffs, the Court finds that Magistrate Dancks correctly recommended that the Court deny Defendants' motion as to the claims against Defendant Smith.

(Dkt. No. 29 at 9.)

In support of the pending motion for summary judgment, Defendant Smith declares that "[a]t the request of an Upstate physician, on February 15, 2011 I requested authorization to acquire a CPAP machine, full face mask, headgear and tubing." (Dkt. No. 37-4 ¶ 5.) Defendant Smith further declares that "[o]n March 3, 2011 I responded to a letter from the plaintiff informing the plaintiff that Regional Medical Director, Dr. Amatucci, does not approve the use of humidifiers with CPAP machines." *Id*. ¶ 9. Finally, Defendant Smith declares that "I clarified with Dr. Amatucci via email on May 24, 2011 that he does not approve the use of humidifiers with CPAP machines, and informed the plaintiff." *Id*. ¶ 10.

Defendants argue that this evidence establishes that Defendant Smith "did not order a humidifier for plaintiff's CPAP machine pursuant to her understanding of Dr. Amatucci's medical position that humidifiers are not medically necessary." (Dkt. No. 37-7 at 3.) However, the evidence presented establishes only that Defendant Smith checked with Defendant Amatucci about the policy *after* she failed to provide Plaintiff with all of the prescribed equipment. Thus, it does not establish that she was "merely following procedures put in place by her supervisors" when she placed the order. Therefore, although I stress yet again that this is a very close case, Defendants have not established that they are entitled to judgment as a matter of law on this ground.

17

C.      Qualified Immunity

Defendants argue that they are entitled to qualified immunity.  (Dkt. No. 37-7 at 4.)

Defendants' qualified immunity argument states:

> [B]oth defendants acted reasonably and in conformance with their
> duties and authority in a good faith attempt to provide the plaintiff
> with appropriate medical care. Defendant Smith reasonably relied on
> the medical judgment of [Defendant] Amatucci when ordering
> plaintiff's medical equipment, and defendant Amatucci reasonably
> exercised his medical judgment in determining that a humidifier was
> not required to treat plaintiff's sleep apnea.  Therefore, the defendants
> are entitled to qualified immunity.

*Id*.  Defendants' argument is without merit.

"Public officials enjoy qualified immunity from suit for damages under 42 U.S.C. § 1983

for acts undertaken in their official capacity, unless their conduct violates clearly established

constitutional rights of which an objectively reasonable official would have known." *Harhay v.*

*Town of Ellington Bd. of Educ.*, 323 F.3d 206, 211 (2d Cir. 2003).  "The issues on qualified

immunity are: (1) whether plaintiff has shown facts making out violation of a constitutional right;

(2) if so, whether that right was clearly established; and (3) even if the right was clearly

established, whether it was objectively reasonable for the [official] to believe the conduct at issue

was lawful." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013) (punctuation

omitted).

Here, as discussed above, Plaintiff has, for the purposes of this motion, shown facts

making out the violation of a constitutional right.  As discussed above, Second Circuit precedent

clearly establishes that the reflexive application of a blanket policy to deny medical care without

considering the individualized needs of a particular inmate can violate the Eighth Amendment.

*Johnson*, 412 F.3d at 400.  Finally, a reasonable juror could conclude that it was not objectively

reasonable for Defendants to believe that their conduct was lawful.  Conversely, of course, a

reasonable juror could conclude that it *was* objectively reasonable for Defendants to believe that

their conduct was lawful.  Because the facts regarding Defendants' conduct could be construed as

either reasonable or unreasonable by a jury, summary judgment is not appropriate on qualified

immunity grounds.  Therefore, I recommend that the Court deny Defendants' motion for

summary judgment.[6]

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 37) be

**DENIED**; and it is further

**ORDERED** that the Clerk provide Plaintiff with copies of *Byng v. Wright*, No. 09 Civ.

9924 (PKC)(JCF), 2012 U.S. Dist. LEXIS 39618, 2012 WL 967430 (S.D.N.Y. Mar. 20, 2012)

and *Watson v. Wright*, No. 9:08-CV-62 (NAM/ATB), 2011 U.S. Dist. LEXIS 116709, 2011 WL

4527789 (N.D.N.Y. Aug. 4, 2011).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file

written objections to the foregoing report.  Such objections shall be filed with the Clerk of the

Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

**PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) (per curiam)); 28 U.S.C.

---

[6]     This recommendation does not conflict with the Court's earlier ruling denying
Plaintiff's motion for a temporary restraining order.  Here, Defendants bear the burden of
showing, through the production of admissible evidence, that no genuine issue of material fact
exists.  In moving for a temporary restraining order, Plaintiff was required to establish a clear or
substantial likelihood of success on the merits.

§ 636(b)(1); Fed. R. Civ. P. 72, 6(a).


Dated: April 29, 2014
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge