**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**DONALD GRIFFIN,**

                              **Plaintiff,**

    **vs.**                                                 **9:11-cv-1125
                                                                               (MAD/TWD)**

**DR. GERALD AMATUCCI and NURSE SMITH,**
*Nurse Administrator, Upstate Correctional Facility,*

                              **Defendants.**
_____

**APPEARANCES:**                                 **OF COUNSEL:**

**DONALD GRIFFIN
87-A-0320**
Orleans Correctional Facility
3531 Gaines Basin Road
Albion, New York 14411
Plaintiff *pro se*

**OFFICE OF THE NEW YORK**             **ADRIENNE J. KERWIN, AAG**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorney for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## DECISION AND ORDER

### I. INTRODUCTION

     Plaintiff commenced this civil rights action in September of 2011, alleging that his constitutional rights were violated while he was incarcerated at Upstate Correctional Facility. *See* Dkt. No. 1. Plaintiff alleges that Defendants violated his Eighth Amendment right to adequate medical care by providing him with a CPAP machine without the humidifier attachment recommended by his treating specialist. *See id.*

On October 31, 2013, Defendants filed a motion for summary judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure. *See* Dkt. No. 37-2 at 1. In a Report-Recommendation and Order dated April 29, 2014, Magistrate Judge Dancks recommended that the Court deny Defendants' motion. *See* Dkt. No. 42. On May 16, 2014, Defendants filed objections to Magistrate Judge Dancks' Report-Recommendation and Order. *See* Dkt. No. 43.

Currently before the Court is Magistrate Judge Dancks' Report-Recommendation and Order.

## II. BACKGROUND

On August 24, 2010, Plaintiff, then an inmate at Upstate Correctional Facility, underwent a sleep study at Alice Hyde Medical Center. *See* Dkt. No. 1 at 5.[1] Plaintiff was diagnosed with obstructive sleep apnea. *See id.* Plaintiff underwent another sleep study at Alice Hyde Medical Center on January 11, 2011, to determine the best treatment for his condition. *See* Dkt. No. 1 at 5; Dkt. No. 37-4 at ¶ 3. The specialist who conducted the study stated that "CPAP should be initiated using an UltraMirage full face medium mask with heat and humidity[.]" *See* Dkt. No. 1 at 12; Dkt. No. 37-4 at ¶ 4.

On February 14, 2011, Defendant Nancy Smith, a Nurse Administrator at Upstate Correctional Facility, received a quote for the price for Plaintiff's CPAP machine. *See* Dkt. No. 1 at 13. The document did not contain a quote for the humidifier recommended by the specialist. *See id.* CPAP machines with humidifiers cost approximately $230 more than those without. *See id.* at 20. Defendant Smith submitted a request for approval for the cost of the CPAP machine without a humidifier. *See* Dkt. No. 41-4 at 3. Defendant Gerald Amatucci approved Defendant

---

[1]To avoid confusion, anytime the Court references a specific page number for an entry on the docket, it will cite to the page number assigned by the Court's electronic filing system.

Smith's request for that CPAP machine on February 15, 2011.  *See* Dkt. No. 37-4 at ¶ 6.  On February 22, 2011, Defendant Smith issued Plaintiff a CPAP machine without a humidifier attachment.  *See* Dkt. No. 1 at 6; Dkt No. 37-4 at ¶ 8.

On February 23, 2011, Plaintiff wrote to Defendant Smith and informed her that the CPAP machine without a humidifier was exacerbating his sleep apnea symptoms by drying out his throat.  *See* Dkt. No. 1 at 6.  Defendant Smith responded in writing on March 7, 2011, that Plaintiff "will not receive a humidifier" for the CPAP machine because Defendant Amatucci, the Regional Medical Director, "will not approve them."  *See id.* at 17.  Defendant Smith stated that the humidifier was "not needed for [the] CPAP machine to work."  *See id.*  Defendant Amatucci has never examined Plaintiff (*see* Dkt. No. 37-3 at 28:16-18), and nothing in the record indicates that Defendant Amatucci reviewed Plaintiff's medical files in the course of considering Defendant Smith's request.

Plaintiff submitted a grievance regarding the humidifier issue on May 17, 2011.  *See* Dkt. No. 1 at 19.  Plaintiff attached a letter from an unnamed person, which was addressed to him, stating that "Stephanie spoke with Alice Hyde Hospital Sleep Apnea Center . . . According to them the humidifier should always be used."  *See id.* at 20.  Plaintiff asserts that this letter indicates that "Alice Hyde Medical Center Sleep Lab made it clear" that the humidifier was required.  *See id.* at 7.

Plaintiff's grievance was denied at the first level of review.  *See id.*  On June 16, 2011, the Superintendent denied the grievance at the second level of review.  *See id.* at 30.  The Superintendent's denial stated that Plaintiff "has been repeatedly advised that per . . . Dr. Amatucci, no humidifiers for CPAP machines will be approved as they are not medically necessary. Humidification has no effect on the performance of the machine in preventing sleep

apnea. [Plaintiff] has a functional CPAP machine that does not require humidification to operate properly." *See id.* Plaintiff's grievance was denied at the final level of review on August 24, 2011. *See id.* at 36. The denial stated that "upon review by the Regional Medical Director, a humidifier for [the] CPAP machine is not medically indicated at this time." *See id.*

Plaintiff filed the complaint in this action on September 22, 2011. *See* Dkt. No. 37-2 at ¶ 3. He alleges that he "is suffering from sleep deprivation," which produces "continuous headaches, burning eyes, and heighten[ed] anxiety from fear of having a stroke or a[ ] heart attack or failure." *See* Dkt. No. 1 at 10. Plaintiff requests injunctive relief and damages. *See id.* at 38.

Defendants Amatucci and Smith moved to dismiss the complaint. *See* Dkt. No. 16. Plaintiff opposed the motion. *See* Dkt. No. 21. The Court denied the motion, finding that although "[t]his is a very close case," Plaintiff had alleged facts plausibly suggesting that Defendants, perhaps motivated by cost considerations, violated the Eighth Amendment by reflexively applying a blanket policy against a particular treatment in the face of contrary recommendations from treating physicians. *See* Dkt. No. 27 at 9; Dkt. No. 29. Defendants answered the complaint (*see* Dkt. No. 30; Dkt. No. 37-2 at ¶ 5), and the parties engaged in discovery. Defendants then moved for summary judgment. *See* Dkt. No. 37-2 at ¶ 2.

In her Report-Recommendation and Order, Magistrate Judge Dancks recommended that the Court deny Defendants' motion for summary judgment. *See* Dkt. No. 42. Noting that "this remains an extremely close case," Magistrate Judge Dancks found that Defendants have not met their burden of showing that no genuine issue of material fact exists. *See id.* at 11. Specifically, Magistrate Judge Dancks stated that "Defendants have not included any facts about Plaintiff's particular experience of sleep apnea symptoms in their separate statement of facts or directed the

Court to any specific part of Plaintiff's medical record describing Plaintiff's symptoms." *See id.* at 10.

Currently before the Court is Magistrate Judge Dancks' April 29, 2014 Report-Recommendation and Order and Defendants' objections thereto.

### III. DISCUSSION

**A.    Standard**

Under Federal Rule of Civil Procedure 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists. *See Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006) (citation omitted). Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist. *See id.* at 273. To defeat summary judgment, the nonmoving party must do more than "rest on mere allegations or denials of his pleadings." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 259 (1986) (citation omitted). Rather, a dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. In determining whether a genuine issue of material[2] fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).

---

[2] A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson*, 477 U.S. at 248.

5

When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).  However, when a party files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error.  *O'Diah v. Mawhir*, No. 9:08–CV–322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted).  After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).

A litigant's failure to file objections to a magistrate judge's report and recommendation, even when that litigant is proceeding *pro se*, waives any challenge to the report on appeal.  *See Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir. 2003) (holding that, "[a]s a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point" (citation omitted)).  A *pro se* litigant must be given notice of this rule; notice is sufficient if it informs the litigant that the failure to timely object will result in the waiver of further judicial review and cites pertinent statutory and civil rules authority.  *See Frank v. Johnson*, 968 F.2d 298, 299 (2d Cir. 1992); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (holding that a *pro se* party's failure to object to a report and recommendation does not waive his right to appellate review unless the report explicitly states that failure to object will preclude appellate review and specifically cites 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and former 6(e) of the Federal Rules of Civil Procedure).

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment."  U.S. Const. amend. VIII.  This includes the provision of medical care and

6

punishments involving "the unnecessary and wanton infliction of pain." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir.1994) (citations omitted). A prisoner advancing an Eighth Amendment claim for denial of medical care must allege and prove deliberate indifference to a serious medical need. *See Wilson v. Seiter*, 501 U.S. 294, 297 (1991); *Hathaway*, 37 F.3d at 66. More than negligence is required "but less than conduct undertaken for the very purpose of causing harm." *Hathaway*, 37 F.3d at 66.

The test for an Eighth Amendment claim is twofold. First, the prisoner must show that there was a sufficiently serious medical need. *See Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quotation omitted). Second, the prisoner must show that the prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm. *See id.* (quotation omitted). "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer v. Brennan*, 511 U.S. 825, 844 (1994).

There is no distinct litmus test to determine if a medical condition is serious, so courts weigh certain factors to make this determination, such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain." *Brock v. Wright*, 315 F.3d 158, 162–63 (2d Cir. 2003) (quoting *Chance*, 143 F.3d at 702). The court should also judge the severity of the denial of care within the context of the surrounding facts and circumstances of the case. *See Smith*, 316 F.3d at 185.

Deliberate indifference requires the prisoner "to prove that the prison official knew of and disregarded the prisoner's serious medical needs." *Chance*, 143 F.3d at 702. Thus, prison officials must be "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). "Mere disagreement over proper treatment does not create a constitutional claim," as long as the treatment was adequate. *Chance,* 143 F.3d at 703. Furthermore, allegations of negligence or malpractice do not constitute deliberate indifference unless the malpractice involved culpable recklessness. *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).

**B.     Defendants' Objections**

In their objections to Magistrate Judge Dancks' Report-Recommendation and Order, Defendants object on three grounds. *See* Dkt. No. 43 at 1. First, Defendants argue that "the court misstated and misapplied the summary judgment standard[.]" *See id.* Defendants claim that while Plaintiff's allegations were sufficient to withstand a motion to dismiss, Plaintiff has not provided enough admissible evidence to support these allegations and defeat summary judgment. *See id.* at 2. Defendants argue that, "[a]t the summary judgment stage, it is the lack of proof of a previously-deemed sufficient allegation that sinks a plaintiff." *See id.*

Second, Defendants argue that Plaintiff's claim can only be viewed in two ways, and either way will result in Plaintiff losing on the merits. *See id.* If Plaintiff is claiming that the treatment provided for sleep apnea was insufficient, Defendants argue that disagreements between the specialist and Defendant Amatucci on how to treat sleep apnea cannot be the basis for a deliberate indifference claim. *See id.* at 2-3. Likewise, if Plaintiff is claiming that the treatment caused dry

mouth and sleep difficulty, Defendants argue that "plaintiff does not suffer from a sufficiently serious medical need to establish an Eighth Amendment violation." *See id.* at 3-4.

Third, Defendants claim that they are entitled to qualified immunity. *See id.* at 1. Defendants argue that both Dr. Amatucci and Nurse Administrator Smith acted objectively reasonable and consistent with professional medical standards when they chose not to provide Plaintiff with the humidifier. *See id.* at 4. Defendants assert that it is "unreasonable and shocking" that they may be found liable for a constitutional violation when their actions were based on accepted medical standards. *See id.*

**C.    Analysis**

Contrary to Defendants' contentions, Magistrate Judge Dancks correctly recommended that the motion for summary judgment should be denied. Although Defendants continue to maintain that Plaintiff has not suffered a serious medical condition, they have not submitted any facts about Plaintiff's particular condition or sleep apnea symptoms. Defendants overlook the fact that the CPAP machine is exacerbating Plaintiff's sleep apnea symptoms, and these worsened symptoms may result in serious health problems. *See* Dkt. No. 38-1 at 8-10, 12-15, 21, 23-24, 26; Dkt. No. 1 at 6, 9. Although Defendants cited cases where various courts have found that alleged worse conditions than sleep apnea did not constitute a serious medical need, district courts in other circuits have concluded that sleep apnea may be a serious medical condition. *See Ross v. Westchester County Jail*, No. 10 Civ. 3937, 2012 WL 86467, \*5 (S.D.N.Y. Jan. 11, 2012) (holding that sleep apnea is a serious medical condition which "may be a life-threatening disorder"); *Dortch v. Davis*, No. 11-cv-841, 2014 WL 1125588, \*5 (S.D. Ill. Mar. 21, 2014) (finding sleep apnea a serious medical condition, with long term effects that may include "high

9

blood pressure, stroke, heart failure, diabetes, depression, and ADHD") (citation omitted); *Goudlock v. Perez*, No. 08cv204, 2012 WL 846444, *5 (S.D. Cal. Mar. 13, 2012) (citations omitted); *see also Pierce v. Gonzales*, No. 1:10cv285, 2011 WL 703594, *12 (E.D. Cal. Feb. 18, 2011); *Cramer v. Iverson*, No. 07-cv-725, 2008 WL 4838715, *3 n.3 (D. Minn. Nov.5, 2008) (assuming that sleep apnea constitutes a serious medical condition). Whether Plaintiff's conditions rise to the level of seriousness discussed in those cases is uncertain, but Defendants have not submitted enough specific evidence about Plaintiff's condition to warrant granting Defendants' motion for summary judgment. As previously mentioned, summary judgment can only be granted if there are no genuine issues to any material facts and the burden of proof is on the moving party. Although this remains a close case, the Court finds that Magistrate Judge Dancks correctly concluded that there are still genuine issues as to the material facts regarding the seriousness of Plaintiff's medical condition.

Moreover, concerning Defendants' claim that Plaintiff cannot establish that they acted with deliberate indifference, Magistrate Judge Dancks correctly recommended that Defendants have not met their burden of demonstrating that they are entitled to summary judgment on this ground. As to Defendant Amatucci, the evidence suggests that he implemented a blanket policy against CPAP machines with humidifiers that may or may not have been medically supported in Plaintiff's individual case. *See* Dkt. No. 1 at 17; Dkt. No. 38; Dkt. No. 37-3 at 26. The reflexive application of a blanket policy against a particular treatment in the face of contrary recommendations from treating physicians may indicate deliberate indifference. *See Johnson v. Wright*, 412 F.3d 398, 400 (2d Cir. 2005). Although a blanket policy would not be considered deliberate indifference if the medical personnel considered the plaintiff's particular medical needs as part of the decision-making process (*see, e.g., Byng v. Wright*, No. 09 Civ. 9924, 2012 WL

967430, *9-10 (S.D.N.Y. Mar. 20, 2012), there is no evidence in the record indicating that Defendant Amatucci personally examined Plaintiff or considered Plaintiff's particular medical needs when implementing the blanket policy. *See* Dkt. No. 37-3 at 28:16-18. Defendant Amatucci also continues to assert that Plaintiff merely disagrees with the treatment that Defendants provided. The evidence, however, suggests that this is not a mere disagreement with the treatment he received, but was a blanket policy against the prescribed device which led to the exacerbation of the symptoms related to Plaintiff's sleep apnea. *See* Dkt. No. 37-7 at 5; Dkt. 41-3 at 2; Dkt. No. 38-1. Accordingly, the Court finds that Defendant Amatucci is not entitled to summary judgment.

Similarly, as to Defendant Smith, Magistrate Judge Dancks correctly found that she also is not entitled to summary judgment. Although Defendant Smith claims that she did not act with deliberate indifference because she has no ability to challenge the policy implemented by Defendant Amatucci, the evidence presented suggests that Defendant Smith checked with Defendant Amatucci about the policy only after she failed to provide Plaintiff with all of the prescribed equipment. *See* Dkt. No. 37-7 at 3. In light of the special solicitude the Court must afford to *pro se* plaintiffs, the Court finds that Defendant Smith is not entitled to summary judgment.

Finally, Magistrate Judge Dancks correctly recommended that the Court deny Defendants' motion for summary judgment based on qualified immunity. As Magistrate Judge Dancks stated, "Second Circuit precedent clearly establishes that the reflexive application of a blanket policy to deny medical care without considering the individualized needs of a particular inmate can violate the Eighth Amendment." *See* Dkt. No. 42 at 18-19 (citing *Johnson*, 412 F.3d at 400). Since a reasonable juror could find that it was not objectively reasonable for Defendants to believe that

their conduct was lawful, the Court finds that summary judgment is not appropriate on qualified immunity grounds.

Based on the foregoing, the Court denies Defendants' motion for summary judgment.

## IV. CONCLUSION

After carefully considering Magistrate Judge Dancks' Report-Recommendation and Order, Defendants' objections thereto, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Magistrate Judge Dancks' April 29, 2014 Report-Recommendation and Order is **ADOPTED** in its entirety for the reasons stated therein; and the Court further

**ORDERS** that Defendants' motion for summary judgment is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve the parties with a copy of this Decision and Order in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: June 19, 2014
Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge